**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-3195

**Brianna Cameron, individually and on behalf of others similarly situated,**

    **Plaintiff,**

v.

**Goodtime Towne Tavern, Inc.,**

    **Defendant.**

---

**COMPLAINT & JURY DEMAND**

---

Plaintiff Brianna Cameron, individually and on behalf of all others similarly situated, by and through her attorneys, Sara A. Green, of Bachus & Schanker, LLC respectfully alleges for her *Complaint & Jury Demand* as follows:

### I. INTRODUCTION

1. This case involves the exploitation of exotic dancers, i.e. young female dancers, in adult entertainment establishments.

2. Defendant, Goodtime Towne Tavern has and continued to unjustly and illegally enrich itself at dancers' expense, denying Plaintiff and other Class members their earned minimum wages, overtime pay, and the full retention of their tips, charging the Plaintiff and similarly situated dancers fees to work, and subjecting them to fines.

3. Defendant's actions in denying Plaintiff and other Class members a minimum wage, overtime pay, and the full retention of their earned tips, and requiring Plaintiff and other Class members to pay various fees and fines in order to work, has significantly decreased the incomes of

these employees while unjustly and illegally enriching Defendant.

**JURISDICTION AND VENUE**

4. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the Colorado Minimum Wage Act (the "CMWA"), Colo. Rev. Stat. § 8-6-101 *et seq.*, and Colorado common law. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. This court has supplemental jurisdiction over any and all state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of Colorado and a substantial part of the events at issue in this lawsuit took place in the District of Colorado.

**III. PARTIES**

7. Plaintiff Brianna Cameron is citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado. Plaintiff was, at relevant times, employed as a dancer at Goodtime Towne Tavern in Garden City, Colorado.

8. The Class that Plaintiff seeks to represent is composed of employees who worked as dancers for Defendant in the State of Colorado and elsewhere where Defendant intentionally and unlawfully misclassified the members of the Class ("Plaintiff Dancers," "dancers" or "Class members") as independent contractors, failed to pay them a minimum wage and overtime payments, charged them various fees and fines, and otherwise violated their legal rights as set rights as set forth herein.

9. Defendant GoodTime Towne Tavern ("Defendant") is a Colorado corporation with a principal place of business in Garden City, Colorado. Stan Pettengill is the owner

At all times pertinent to this Complaint, Defendant was an enterprise engaged in interstate commerce or in the production of goods for consumers as defined § 3(r) and 3(s) of the FLSA, 29 U.S.C. §§ 203(r) and 203(s). Upon information and belief, the annual gross sales volume of the Defendants was in excess of $500,000 per annum.

## FACTUAL ALLEGATIONS

10. Defendant is an adult entertainment establishment that caters mainly to male clientele by providing entertainment by female dancers, including Plaintiff and other Class members, in various forms of undress.

11. Defendant classified Plaintiff and other Class members as independent contractors, failed to pay a minimum wage or overtime pay, regularly denied her and other members of the Class the full wages and tips they had earned, required them to pay various fees and fines in order to be allowed to work, and otherwise violated their legal rights as set forth herein.

12. Defendants business model is predicated entirely on the exploitation of Plaintiff and other Class members in order for the company and its owners to earn a profit.

13. Although Plaintiff and other Class members were employed by Defendant, Defendant paid them no money for the work they performed.

14. Instead of paying Plaintiff and other Class members for their work, Defendant actually required that Plaintiff and other Class members pay Defendant before they were allowed to work.

15. The amounts that Defendant required Plaintiff and other Class members to pay before being allowed to work depended on the day of their shift. In order to work the more

profitable Friday and Saturday shifts, Plaintiff and other Class members were required to pay a larger fee to Defendant

16. If Plaintiff and other Class members arrived more than 15 minutes late, they were forced to pay a fine of $5 per additional 15 minutes until they arrived. When Plaintiff and other Class members worked Sunday through Thursday they were forced to pay a "House Fee" of $10. For Friday and Saturday they were required to pay a "House Fee" of $20.

17. The only compensation received by Plaintiff and other Class members was a portion of the gratuities of "tips" that they were given by customers.

18. In addition to charging Plaintiff and other Class members various fees before allowing them to work, Defendant required that Plaintiff and other Class members give a portion of their earned tips to the security guards ("bouncers") and the disk jockeys ("DJs").

19. Defendant used the money paid to it by Plaintiff and other Class members in order to fund the operation of Goodtime Towne Tavern.

20. The fees, fines, and tips that Defendant required Plaintiff and other Class members to pay were unlawful "kick backs."

21. In addition to funding its operations through the fees demanded of Plaintiff and other Class members, Defendant reaped the benefits of the substantial profits from door charges, drink sales and food without paying Plaintiff and Class members a wage.

22. Furthering their exploitation, Defendant also failed to pay Plaintiff and other Class members any overtime wages for weeks during which they worked in excess of forty hours.

23. Plaintiff was only ever given the option to work minimum 7-hour shifts, multiple times a week. Plaintiff consistently maintained this schedule for at least the past two years. She was

never compensated for the hours that she worked beyond forty hours per week. Upon information and belief, other Class members likewise worked more than 40 hours per week.

24. Plaintiff and other Class members were, and continue to be, employees of Defendant, not independent contractors.

25. At all relevant times, Plaintiff and other Class members are, and were, employees of Goodtime Towne Tavern under the Fair Standards Labor Act ("FLSA") including the Colorado Labor Code, and are, and were, entitled to a minimum wage, receipt of overtime pay, retention of all tips received, and all other benefits regularly conferred upon employees by statute.

26. At all relevant times, Defendant has been the employers of Plaintiff and other Class members.

27. Defendant intentionally and willfully misclassified Plaintiff and other Class members as independent contractors in order to avoid paying them the minimum wage and/or overtime pay required under the FLSA and/or and the labor laws of the states in which Defendant operated, including the Colorado Minimum Wage Act.

28. Defendant also intentionally withheld other statutory rights and benefits, harming Plaintiff and other Class members and causing them significant injury and financial loss.

29. Plaintiff and other Class members received no wage payments from Defendant, but instead depended solely on gratuities received from customers.

30. In many instances, Defendant's practices resulted in Plaintiff and other Class members earning less than minimum wage, in violation of federal and state law.

31. Defendant exercised significant control over Plaintiff and other Class members.

32. Defendant controlled the amount that Plaintiff and other Class members were allowed to charge for personal dances, what they could wear, what their stage name could be, and how long they worked for.

33. Defendant required Plaintiff and other Class members to wear, or not wear, particular types of dress and otherwise regulated their physical appearance. For example, Defendants required dancers to 2 G-strings or thongs at all times, approved dancers' outfits, footwear and stage names.

34. Defendant regulated Plaintiff's and other Class members' workplace conduct through oral and written guidelines and policies.

35. Defendant regulated Plaintiff and other Class members by specifying the manner in which they danced, including types of movements that were allowed and those that were prohibited.

36. Defendant regulated Plaintiff and other Class members by specifying the manner in which they interacted with customers, specifying types of interaction and conduct that were allowed and others that were prohibited.

37. Defendant further regulated Plaintiff and other Class members by requiring them to "tip out" the disc jockeys ("DJs"), and bouncers.

38. Defendant required Plaintiff and other Class members set the amount that customers were required to pay for lap dances and use of the private dance room.

39. Defendant also required Plaintiff and other Class members to pay a fee to work any given shift, in varying amounts depending on the day.

40. Defendant controlled Plaintiff's and other Class members' schedules. Specifically, Defendant did this by reserving the right to require Plaintiff and other Class members to select the

days they would be working a week in advance; setting a minimum number of sessions they must work that week and setting a minimum number of hours per showtime.

41.  Plaintiff and other Class members did not have significant control over their opportunity for profit or loss and would oftentimes be indebted to the Tavern if they did not make enough tips in an evening to cover the "house fees".

42.  Defendant was responsible for attracting customers, advertising, and maintaining food and alcohol availability and pricing.

43.  The investment of Plaintiff and other Class members was relatively minor compared to Defendant's considerable investment in operating a nightclub.

44.  Plaintiff regularly worked at Defendant for approximately two years. Other Class members also worked regularly for Defendant for a long time.

45.  Plaintiff and other Class members did not exercise the skill required to elevate their status to independent contractors.

46.  Plaintiff and other Class members were not selected as dancers based on prior dancing experience, skill, or propensity and received no training or instruction while employed by Defendant.

47.  Plaintiff and other Class members were an integral part of the success of the Defendant's business.

48.  Defendant's business model was dependent on Plaintiff and other Class members.

49.  The totality of the circumstances surrounding Plaintiff's and other Class members' employment relationship with Defendant indicates economic dependence.

50.  Plaintiff and other Class members were tipped employees entitled to full retention of all gratuities.

51. Plaintiff and other Class members were tipped employees who customarily and regularly received $50-$200 a night in tips.

52. Defendant intentionally denied Plaintiff and other Class members their due minimum wage as tipped employees.

53. The dance tips and customer payments for private room performances are tips, not wages or service charges.

54. Defendant did not directly receive any monies from customers for the dances performed by Plaintiff and other Class members. Instead, Defendant depended on Plaintiff and other Class members to give them the monies received by them.

55. Defendant treated the dance tips and the payments by customers for private room performances as tips by requiring Plaintiff and other Class members to "tip-out" Defendant's bouncers and disc jockeys ("DJs") by paying them ten percent of tips earned by Plaintiff and other Class members.

56. These are unlawful "kick-backs" within the meaning of the FLSA.

57. Upon information and belief, the monies given to Plaintiff and other Class members by the customers for the dances performed were not entered into Defendant's gross receipts.

58. Defendant did not issue the Plaintiff or Class members W-2 forms, 1099 forms, or any other wage-related documents indicating any amounts paid from their gross receipts to Plaintiff and other Class members as wages.

59. Employers may apply a tip credit to offset any minimum wage obligation owed to tipped employees only if the employer has informed the employee of the applicability of this provision in advance and the employee retains all tips received.

60. An employer may require employees to pool their tips only when the pool consists of employees who customarily and regularly receive tips.

61. Defendant never informed Plaintiff and other Class members of the applicability of this provision in advance (instead telling them that it did not apply) and therefore were prohibited from applying a tip credit to offset Plaintiff's and other Class members' minimum wage.

62. Bouncers and DJs are not employees who customarily and regularly receive tips. Defendant's bouncers and DJs received regular paychecks valued at or above the hourly minimum wage. Therefore, the bouncers and DJs invalidated any tip pool and Plaintiff and other Class members were entitled to retain the entirety of the tips received from customers.

63. Plaintiff and other Class members were entitled to the full minimum wage due under the applicable federal and/or state law (including Colorado law) without any tip credit *and* to retain the full amount of any dance tips and pay for private room performances given to them by customers.

64. Plaintiff and other Class members have suffered financial loss, injury, and damage as a result of Defendant's failure to pay them minimum wages and/or overtime pay, requiring them to pay stage fees, requiring them to pay a daily fee, and requiring them to share a percentage of their tips with the bouncers and DJs.

65. All actions by Defendant described herein were willful, intentional, and not the result of negligence or good-faith but incorrect assumptions.

66. At all relevant times, Defendant knew or recklessly disregarded that the FLSA, Colorado Labor Code, and labor laws of the other states in which they operate applied to Plaintiff and other Class members and, that under the economic reality test, Plaintiff and other Class members were obviously employees, not independent contractors, entitled to a minimum wage.

67. At all relevant times, Defendant knew or recklessly disregarded that Plaintiff and other Class members were entitled to one and one half the minimum wage during weeks Plaintiff and other Class members worked overtime.

68. At all relevant times, Defendant knew or recklessly disregarded that Plaintiff and other Class members were tipped employees.

69. At all relevant times, Defendant knew or recklessly disregarded that the bouncers and DJs were not employees who customarily and regularly received tips and that bouncers and DJs invalidated any tip pool.

70. At all relevant times, Defendant knew or recklessly disregarded that the dance tips received by Plaintiff and other Class members were Plaintiff's and other Class members' sole property and that the dance tips were tips, not wages or service charges.

71. Defendant viewed the dance tips and customers' room payments as tips by requiring Plaintiff and other Class members to "tip-out" the bouncers and DJs using money earned by Plaintiff and other Class members from dance tips and room payments.

72. At all relevant times, Defendant knew or recklessly disregarded the requirement that it pay Plaintiff's and other Class members' wages finally and unconditionally or "free and clear."

73. Defendant also willfully failed to meet the wage requirements of the FLSA by requiring Plaintiff and other Class members to pay "kick-backs" directly or indirectly to Defendant, or to another person for Defendant's benefit, including the whole or part of the wage delivered to Plaintiff and other Class members.

74. Defendant refused to issue Plaintiff and other Class members any tax documentation regarding their wages and employment, despite requests to do so from Plaintiff and other Class members.

75. Despite being aware of the FLSA's and state labor laws' application to Plaintiff and other Class members, Defendant intentionally and willfully chose to misclassify Plaintiff and other Class members as independent contractors, to withhold minimum wages, to deny overtime pay, and to require Plaintiff and other Class members to share their tips with employees who do not customarily and regularly receive tips.

**Class Allegations**

76. Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

77. All requirements of Fed.R.Civ.P. 23(a) and (b) are satisfied.

78. All members of the Class are victims of a single decision, policy, and/or plan designed by Defendant to intentionally deny Plaintiff and other Class members of minimum wages and overtime pay, to require Plaintiff and other Class members to pay various fees to work, and to require Plaintiff and other Class members to share a percentage of their tips.

79. The members of the Class to be certified against Defendant are defined as follows: All individuals, who at any time from the date three years prior to the date this Complaint was originally filed continuing through the present, worked as dancers at Goodtime Towne Tavern, Inc., in Garden City, Colorado, and were designated as independent contractors.

80. There are questions of law and fact common to the Class including whether the Defendant violated the FLSA and/or the labor laws of the states in which they operate (including but not limited to the Colorado Labor Code) by treating Plaintiff and other Class members as independent contractors instead of employees, whether Plaintiff and other Class members were denied minimum wages and/or overtime pay, whether the monies given to Plaintiff and other Class members as dance tips are tips to which they are solely entitled, whether the bouncers and DJs are

employees who customarily and regularly receive tips, whether Defendant charged Plaintiff and other Class members to work, whether Defendant intentionally denied Plaintiff and other Class members the full retention of their tips, whether Defendant required Plaintiff and other Class members to pay "kick-backs" in violation of the FLSA, and whether Defendant was unjustly enriched at the expense of Plaintiff and other Class members.

81. The claims of the named Plaintiff are typical of the claims of the class because she was not paid a minimum wage or overtime pay, was required to pay in order to work, and was required to share her tips like all other Class members.

82. The named Plaintiff will fairly and adequately protect the interests of the Class and the proposed sub-class for those Class members who were employed at Defendant. The named Plaintiff, like all Class members, has suffered financial loss, injury, and damage as a result of Defendant's failure to pay her minimum wages and/or overtime pay, requiring her to pay fees in order to work, and requiring her to share a percentage of their tips with the bouncers and DJs.

83. The named Plaintiff has no interest that would be adverse to the interests of the Class.

84. This class action is maintainable under Fed.R.Civ.P. 23(b)(1). The prosecution of separate actions on behalf of individual class members would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

85. This class action is maintainable under Fed.R.Civ.P. 23(b)(3). The questions of law and fact are common to Plaintiff and predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FAIR LABOR STANDARDS ACT - 29 U.S.C. 201, *et. seq*.

86. Plaintiff hereby incorporates all paragraphs by reference all as if fully set forth herein.

87. This claim arises from Defendant's willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq*., for failure to pay Plaintiff and other Class members a minimum wage and overtime pay to which they were entitled, requiring that they share their tips with DJs and bouncers, and charging Plaintiff and other Class members various fees to work.

88. At all times relevant, Defendant has been, and continue to be, "employers" engaged in commerce, within the meaning of the FLSA 29 U.S.C. § 201, *et. seq.*

89. At all times relevant, Defendants have employed and continue to employ employees, including Plaintiff and other Class members, who engage or engaged in commerce.

90. At all times relevant, upon information and belief, Defendant has had an annual gross volume of sales made or business done in excess of $500,000.00.

91. The minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 201, *et. seq*., apply to Defendant and protect Plaintiff and other Class members.

92. The named Plaintiff has consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b). As this case proceeds, it is likely that other individuals will sign consent forms and join as Class Members.

93. Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiff and other members of the Class were entitled to be compensated at a rate of $7.25 per hour at all times relevant.

94.     Pursuant to the FLSA, 29 U.S.C. § 207, Plaintiff and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours a week.

95.     Defendant was not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et. seq.*, because Defendant provided no notice to employees of their intention to take a tip credit (instead telling them that it did not apply because they were independent contractors) and because Plaintiff and other Class members were not allowed to retain all of their tip money.

96.     Defendant demanded that Plaintiff and other Class members pay "kick-backs" in the form of fees and tip shares.

97.     Defendant failed to pay Plaintiff's and other Class members' unconditional wages, as Plaintiff and other Class members were required to 'kick-back" fees and tips, directly or indirectly to Defendant or to others for Defendant's benefit.

98.     Defendant, pursuant to their policies and practice, refused and failed to pay a minimum wage and/or overtime pay to Plaintiff and other Class members.

99.     Defendant, pursuant to their policies and practices, charged Plaintiff and other Class members various fees in order to work.

100.    By failing to compensate Plaintiff and other Class members, Defendant violated, and continue to violate, Plaintiff's and other Class members' statutory rights under FLSA, 29 U.S.C. § 201, *et seq.*

101.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

102. The named Plaintiff, on behalf of herself and all members of the Class of Plaintiffs, seeks damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

103. The named Plaintiff, on behalf of herself and all members of the Class of Plaintiffs, seeks recovery of attorneys' fees and cost to be paid by Defendant as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE COLORADO MINIMUM WAGE ACT ("CMWA") – C.R.S. § 8-6-101, *et. seq.*

104. Plaintiff hereby incorporates all paragraphs by reference as if fully set forth herein.

105. This claim arises from Defendant's willful violation of the Colorado Minimum Wage Act, C.R.S. § 8-6-101 *et seq.* as implemented by Colorado Minimum Wage Order Numbers 30. 31, 32, and 33, 7 CCR 1103-1, for failure to pay a minimum wage and overtime pay to Plaintiff and other Class members to which they were entitled.

106. At all times relevant, Defendant has been and continue to be "employers" within the meaning of the CMWA.

107. At all times relevant, Defendant have employed and continue to employ employees, including Plaintiff and other Class members.

108. The minimum wage and overtime provisions of the Colorado Minimum Wage Act - C.R.S. § 8-6-101, *et. seq.*, apply to Defendant and protect Plaintiff and other Class members.

109. Pursuant to the CMWA, Plaintiff and other Class members were entitled to be compensated at a rate of $8.08 per hour.

110. Pursuant to the CMWA, Plaintiff and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours per week.

111. Defendant provided no notice to the employees of their intention to take a tip credit (instead telling them that it did not apply because they were independent contractors), and Plaintiff and other Class members were not allowed to keep all of their tip money.

112. Defendant, pursuant to their policies and practices, refused and failed to pay a minimum wage and/or overtime payments to Plaintiff and other Class members.

113. Defendant, pursuant to their policies and practices, charged Plaintiff and other Class members various fees in order to work.

114. By failing to compensate Plaintiff and other Class members, Defendant violated, and continue to violate, Plaintiff's and other Class members' statutory rights under the Colorado Minimum Wage Act.

115. The foregoing conduct, as alleged, constitutes a willful violation of the CMWA, C.R.S. § 8-4-122.

116. The named Plaintiff, on behalf of herself and the Class, seeks damages in the amount of their respective unpaid wages, interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

117. The named Plaintiff, on behalf of herself and the Class, seeks recovery of attorneys' fees and costs to be paid by Defendant as provided by the CMWA, C.R.S. § 8-6-118.

### THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT

118. Plaintiff hereby incorporates all paragraphs by reference as if fully set forth herein.

119. By refusing to pay Plaintiff and other Class members wages for hours worked, including overtime pay, requiring Plaintiff and other Class members to share their tips, and charging Plaintiff and other Class members fees to work, Defendant was unjustly enriched at the expense of and to the detriment of Plaintiff and other Class members.

120. Defendant's retention of any benefit collected directly and indirectly violated principles of justice, equity, and good conscience when they refused to pay Plaintiff 's and other Class members' wages, required Plaintiff and other Class members to share tips, and charged Plaintiff and other Class members unreasonable fees. As a result, Defendant has been unjustly enriched.

121. Plaintiff and other Class members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to expel to Plaintiff and other Class members the benefit they have unjustly obtained.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor and against Defendant, and award her all relief allowed by law, including but not limited to the following:

   a. Issuance of notice pursuant to 29 U.S.C. § 216(b) as soon as possible to all dancers who worked for Defendant during any portion of the three years immediately preceding the filing of this action. Generally, this notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit without fear of reprisal, retaliation, or abuse by Defendants;

   b. Judgment against Defendant for an amount equal to Plaintiff's and other Class members unpaid back wages, overtime pay, fees, shared tips, and all other unlawful kick-backs;

   c. Judgment against Defendant that its violations of the FLSA were willful;

    d. Liquidated Damages in amount equal to Plaintiff's and other Class members' damages pursuant to 29 U.S.C. § 216(b).

    e. Declaratory relief and other appropriate equitable relief, including injunctive relief;

    f. Pre-judgment and post-judgment interest at the highest lawful rate; Attorney's fees and costs as allowed by law; Leave to add additional plaintiffs by motion the filing of written consent forms, or any other method approved by the Court; and

    g. Such further relief as justice requires.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 13th day of December, 2018.

BACHUS & SCHANKER, LLC

*s/ Sara A. Green*
Sara A. Green
1899 Wynkoop Street, Suite 700
Denver, Colorado 80202
Phone: (303) 893-9800
Sara.green@coloradolaw.net